**STANKO PACKING COMPANY, INC., Plaintiff,**

v.

**Bob BERGLAND, Secretary of Agriculture et al., Defendants.**

Civ. A. No. 80–0713.

United States District Court, District of Columbia.

May 16, 1980.

James Kefauver, Michael Ruane, Washington, D. C., for plaintiff.

Cheryl M. Long, Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This action arises under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the National School Lunch Act, 42 U.S.C. § 1751 *et seq.* By agreement of the parties, plaintiff, Stanko Packing Company, Inc., (Stanko) withdrew its motion for a preliminary injunction and agreed to a hearing on the merits pursuant to Fed.R. Civ.P. 65(a)(2).

Stanko, a Nebraska corporation engaged in the slaughter of livestock and the processing and sale of meat products, instituted this action against Bob Bergland, Secretary of the United States Department of Agriculture (USDA) and other USDA officials to challenge an April 1, 1980 suspension barring Stanko from bidding on or being awarded contracts to supply meat for USDA programs. Until January 3, 1980 Stanko had submitted bids for, and had been awarded contracts to supply meat products to the USDA.

The events leading to Stanko's suspension from the USDA program began on November 2, 1979 when Glasgow Packing Company (Glasgow), Stanko's affiliate, was suspended from participating in any USDA contract awards for preparing, selling, offering for sale and transporting nonfederally-inspected meat products because of evidence indicating that Glasgow Packing Company "may have committed an offense indicating a lack of business integrity or business honesty which seriously and directly affects the question of its responsibility as a government contractor." (Pl. Exhibit 1) Neither Glasgow's suspension nor the affiliation between Stanko and Glasgow are contested by plaintiff.

Stanko was subsequently advised by letter dated January 3, 1980 that because USDA determined it to be an "affiliate" of Glasgow within the meaning of 41 C.F.R. § 1–1.601–1(e), of the Federal Procurement Regulations, Stanko would also be suspended and "so long as that affiliation continues, bids and proposals will not be solicited from Stanko Packing Company and, if received,

will not be considered. No USDA contracts will be awarded to [Stanko] while suspension of Glasgow Packing Company is in effect." 41 C.F.R. § 1–1.605–2(b), the focal point of this action, provides:

(1) Suspension may include all known affiliates of a concern (firm) or individual.

(2) A decision to include known affiliates in a proposed suspension is an individual determination and, as such, must be made on a case by case basis.

Documents indicating that Rudy G. Stanko, Jr., Henry L. Stanko, Jr., and Robert Stanko were principal partners in Glasgow and also principal officers of Stanko led USDA to find a management relationship constituting an affiliation. (Pl. Exhibit 5) The applicable regulation, 41 C.F.R. § 1–1.601–1(e), defines affiliates as follows:

"Affiliates" means business concerns which are affiliates of each other when either directly or indirectly one concern or individual controls or has the power to control another, or when a third party controls or has the power to control both.

The January 3, 1980 letter from USDA to Stanko also reiterated that suspension was an appropriate measure because:

beef carcasses processed at Glasgow Packing Company, which was suspended from bidding on USDA procurements, have been and are likely to be shipped to Stanko Packing Company for possible use in the fulfillment of USDA contracts.

(Pl. Exhibit 5)

Stanko's counsel, upon inquiring, was advised by USDA, that "the investigation confirmed the affiliation between Glasgow and Stanko and implicated Stanko and Glasgow officials in offenses involving the movement of unwholesome meat in the Department of Agriculture programs." (Pl. Exhibit 9) The Federal Procurement Regulations, 41 C.F.R. § 1–1.605–3 required only that the notice of suspension describe the nature of the irregularities in general terms without disclosing the Government's evidence in the ongoing investigation.

A hearing on Stanko's suspension was convened on January 31, 1980 at which time evidence and oral arguments by counsel were made a part of the record. Stanko was formally suspended on April 1, 1980 and now challenges both the adequacy of that hearing as well as the continued suspension imposed by USDA. Arguing that the administrative record is devoid of any evidence of direct involvement by Rudy G. Stanko, Jr., Henry L. Stanko, Jr. or Robert Stanko in Glasgow or evidence tending to show they violated the Federal Meat Inspection Act, 21 U.S.C. § 601 et seq., plaintiff charges that the suspension was arbitrary, capricious and an abuse of discretion, in violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Moreover, according to plaintiff, the suspension is contrary to the applicable Federal Procurement Regulations in that it was not based on adequate evidence but resulted from USDA's finding, standing alone, that Stanko was an affiliate of Glasgow.

As previously discussed, 41 C.F.R. § 1–1.605–2(b) provides that an affiliate of a suspended firm may also be suspended when the facts of the individual case warrant such action. The underlying purpose of a sanction such as suspension is best understood by referring to the introductory section of the regulations:

Debarment, suspension, and placement in ineligibility status are measures which may be invoked by the Government either to exclude or to disqualify bidders and contractors from participation in Government contracting or subcontracting. *These measures should be used for the purpose of protecting the interests of the Government and not for punishment.*

41 C.F.R. § 1–1.601 (emphasis added)

Recognizing the seriousness of such action, the regulations clearly set forth the scope of evaluation to be used in determining whether suspension is an appropriate measure:

Suspension is a drastic action and, as such, shall not be based upon an unsupported accusation. In assessing whether adequate evidence exists for invoking a suspension, consideration should be given to the amount of credible evidence which

is available, to the existence or absence of corroboration as to important allegations, as well as to the inferences which may properly be drawn from the existence or absence of affirmative facts. This assessment should include an examination of basic documents, such as contracts, inspection reports, and correspondence. A suspension may be modified whenever it is determined to be in the interest of the Government to do so.

41 C.F.R. § 1–1.605(b)

The upshot, of course, is that the central purpose of the regulations, as plaintiff concedes, is to protect both the public and the integrity of the procurement process from those contractors whose continued business practices become suspect as a result of prior wrongful acts.

Despite plaintiff's protestations, the administrative record is replete with evidence to support Stanko's suspension from the USDA procurement program by defendant Eddie F. Kimbrell, Debarring Officer, Food Safety and Quality Service. Plaintiff, represented by counsel at the hearing, had the opportunity to rebut the evidence presented by USDA which included documents relating to an extensive investigation by the Omaha, Nebraska United States Attorney's Office into the "activities of Glasgow, Stanko and Nebraska Beef Packers, Inc." and criminal aspects of this case. (Pl. Exhibit 9; Record at p. 15) Exhibit 1 of the Record, for example, a statement by Wilfred R. Grant, says that he worked as Plant Superintendent for both Glasgow and Stanko, most recently from March until August 1979 and had personal knowledge that Stanko purchased approximately 7,500 pounds of beef which had been rejected by USDA as being too old to be used for the School Lunch Program. These beef chunks were shipped from the Stanko plant to Glasgow, Montana, processed without USDA supervision, labeled with federal meat inspection stickers by several Glasgow employees and shipped back to Stanko. Mr. Grant's statement also included a listing of the three Stanko family businesses—Stanko, Glasgow and Nebraska Beef Packing Co.—and the frequent contacts between them. (Record at p. 16–17) Exhibit 2, a sworn statement to a USDA Special Agent by Thomas W. Walker, another employee of both Stanko and Glasgow, (and a foreman of the latter) substantiated the illegal activities and detailed the ways in which Rudy and Henry Stanko operated and supervised the Stanko and Glasgow companies on a daily basis:

Both Austin [Glasgow Plant Manager] and Grant [Glasgow Plant Superintendent] took direct orders from Rudy 'Butch' Stanko and Henry Stanko concerning important matters dealing with operation of the Glasgow plant. Both were in almost daily contact with the Stankos in Gering [Nebraska] for directions on the operations of the Glasgow plant. The two Stanko cousins also paid periodic visits to the [G]lasgow facilities and Butch spent about three (3) weeks in Glasgow during July or August of 1979. Both Austin and Grant did exactly what they were told to do by the Stankos.

Record, Exhibit 2 at p. 1.

A particularly graphic section of that statement by Mr. Walker is the following description of one of Glasgow's "business ventures":

In the late winter of 1979, (Feb.–April, 1979) a trailer load of approximately 300 frozen 'off condition' chucks were sent to Glasgow in a R. G. Stanko Express transport. The chucks were kept frozen because anytime that they were allowed to thaw they began to stink. They were badly damaged because they had been shipped piled on the floor of the transport. They were 'slimmy' [slimy] to the touch, had green mold on them, and some were covered with mud. The U.S.D.A. stamps on the chucks were badly faded and almost illegible.

Record, Exhibit 2 at p. 2.

About half of this meat was subsequently processed into ground beef for the School Lunch Program without the knowledge of USDA inspectors. (Record at 18)

USDA made the decision to suspend Stanko based on Mr. Walker's statement and other documents entered into evidence

at the hearing. (Exhibits 3, 4, 5 and 6). These documents are several corporate tax reports and a USDA Investigation Report highlighting the interlocking management relationships between Stanko and Glasgow. Exhibit 3, the USDA Investigation Report by the Office of the Inspector General reveals that Henry Stanko was President of Stanko and Vice President and a partner of Glasgow. Rudy and Robert Stanko were listed as directors of Stanko and partners of Glasgow. That investigation was made pursuant to the conviction of Nebraska Beef Packers, Inc., another affiliate, for violating the Federal Meat Inspection Act by selling and transporting adulterated beef in interstate commerce. (Record, Exhibit 3)

The Debarring Officer closely examined the above documents concluding:

[T]he actual charges against Stanko are that officials were guilty, suspected, and had been suspended within Glasgow of violating the Meat Inspection Act and that the same officials were also involved in the management of Stanko Packing Company and that it is not strictly an affiliation between two firms but the management responsibilities in both firms. . . . Because I think it is very important, the point I want to make in this, and it is for the record, is not necessarily grounds for suspension of both firms. There has to be some responsibility of officials involved in the activities of the firm that come into play in terms of violating the Meat Inspection Act.

Record at 22–23

Plaintiff persists in challenging the evidence of direct involvement by the three Stanko individuals in the illegal acts despite evidence to the contrary in the statements of the two high-ranking employees and corporate and investigative documents referred to above. (Record at 24–26) Moreover, plaintiff questions the two-month hiatus between Glasgow's suspension and the suspension of Stanko, accusing USDA of suspending Stanko to punish them for challenging USDA procedures following the suspension of Glasgow, specifically, the Department's refusal to allow previously-approved Glasgow beef carcasses to be processed by Stanko after the Glasgow suspension. (Record at 28–29) Plaintiff profers affidavits by Henry, Robert and Rudy Stanko in which they each categorically deny any participation in illegal acts connected to meat procurement contracts with USDA. (Pl. Exhibits 8, 9 and 10; Record at p. 32–33) The Debarring Officer's ultimate decision to suspend Stanko was not altered by plaintiff's evidence:

As Debarring Officer for the Food Safety and Quality Service, I have been charged, under 41 CFR §§ 4–1.605–1(a)(3) and 1–1.605–1(a)(1)(iii), with the responsibility of protecting the interests of the Government by assuring the business honesty and integrity of firms desiring to do business with the Government. The affiliation between Stanko and Glasgow fully warrants the continuation of the suspension against Stanko pending completion of a Grand Jury's investigation with regard to the activities of Glasgow for allegedly preparing, selling, offering for sale, and transporting nonfederally inspected meat, and any legal proceedings which may ensue therefrom.

(Letter dated March 28, 1980 from Mr. Kimbrell to Mr. Kefauver)

Based on the foregoing, it is clear that USDA's suspension of Stanko was grounded on more than the adequate evidence standard required by 41 C.F.R. § 1–1.605. The documentary evidence and inferences drawn therefrom were properly evaluated by Mr. Kimbrell, the Debarring Officer. While a finding of affiliation, standing alone, justifies suspension pursuant to 41 C.F.R. § 1–1.605–2(b), the Debarring Officer must exercise discretion on a case by case basis to determine whether such suspension is appropriate.[1] Here, the decision

---

1. Plaintiff's argument which proposes that the Court create a new standard of review is wholly unpersuasive.

to suspend Stanko must be upheld as supported by not only adequate but also substantial, corroborated evidence on the record as to interlocking management and illegal activities and fully in accordance with law pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Plaintiff simply has not shown that USDA's action was arbitrary, capricious or an abuse of discretion. The Debarring Officer evaluated all of the evidence and determined that the suspension was warranted.

Accordingly, a Judgment granting relief to the defendants is attached herewith.